UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

KELLY ANN C.,

                            Plaintiff,

- v -                                        Civ. No. 8:18-CV-468
                                                              (DJS)

ANDREW M. SAUL,[1] *Comm'r of Soc. Sec.*,

                            Defendant.

**APPEARANCES:**                                     **OF COUNSEL:**

SCHNEIDER & PALCSIK                   MARK A. SCHNEIDER, ESQ.
Counsel for Plaintiff
57 Court Street
Plattsburgh, NY 12901

U.S. SOCIAL SECURITY ADMIN.          JOHANNY SANTANA, ESQ.
OFFICE OF REG'L GENERAL COUNSEL
 - REGION II
Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

**DANIEL J. STEWART**
**United States Magistrate Judge**

## DECISION AND ORDER[2]

Currently before the Court, in this Social Security action filed by Kelly Ann C. against the Commissioner of Social Security pursuant to 42 U.S.C. §§ 405(g) and

---

[1] Andrew M. Saul became the Commissioner of Social Security on June 17, 2019. The Clerk of Court is respectfully directed to amend the caption.

[2] Upon Plaintiff's consent, the United States' general consent, and in accordance with this District's General Order 18, this matter has been referred to the undersigned to exercise full jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. *See* Dkt. No. 8 & General Order 18.

1383(c)(3), are Plaintiff's Motion for Judgment on the Pleadings and Defendant's Motion for Judgment on the Pleadings. Dkt. Nos. 11, 18, & 19. For the reasons set forth below, Plaintiff's Motion is **granted** and Defendant's Motion is **denied**, and the matter is **remanded** for further proceedings.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born on January 23, 1978. Dkt. No. 10, Admin. Tr. ("Tr."), p. 42. Plaintiff reported obtaining a GED. *Id.* She has past work experience as a clinic assistant, a customer service agent, a receptionist, an office assistant/receptionist, and administrative assistant. Tr. at p. 207. Plaintiff alleges disability due to bipolar disorder, anxiety, tobacco use disorder (moderate), depression, asthma, and diabetes. Tr. at p. 161.

### B. Procedural History

Plaintiff filed for Disability Insurance Benefits and Supplemental Security Income on October 13, 2015, alleging disability beginning on July 1, 2010, which Plaintiff later amended to April 1, 2014. Tr. at pp. 47, 137, & 152. Plaintiff was denied benefits, and on Plaintiff's request, a hearing was held on August 9, 2017 before ALJ Brian LeCours, at which Plaintiff was represented and testified. Tr. at pp. 38-67 & 74-79. On November 9, 2017, the ALJ issued a determination finding Plaintiff not disabled. Tr. at pp. 12-28. Plaintiff appealed the determination, and the Appeals Council denied Plaintiff's request for review. Tr. at pp. 1-6. Plaintiff then commenced this action appealing the determination on April 16, 2018. Dkt. No. 1.

### C. The ALJ's Decision

In his decision, the ALJ made the following findings of fact and conclusions of law. First, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2014. Tr. at p. 17. The ALJ next found Plaintiff did not engage in substantial gainful activity since April 1, 2014, the amended alleged onset date. *Id.* The ALJ found that Plaintiff had the following severe impairments: bipolar disorder, depressive disorder, and anxiety disorder. *Id.* The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. Tr. at p. 19. The ALJ next determined that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels except:

> the claimant must avoid concentrated exposure to pulmonary irritants such as fumes, odors, dust and gases; must perform work consisting of unskilled tasks and requiring little or no judgment to do simple duties that can be learned on the job in a short period of time; can have occasional interaction with the general public, co-workers and supervisors.

Tr. at pp. 20-21. Next, the ALJ determined that Plaintiff was unable to perform any past relevant work. Tr. at p. 23. The ALJ found that Plaintiff was born on January 23, 1978 and was 32 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date,[3] has at least a high school education, and is able to communicate in English. Tr. at p. 24. The ALJ found that transferability of job skills is not an issue in this case because Plaintiff's past relevant work was unskilled. *Id.* The ALJ then

---

[3] The ALJ appears to have calculated Plaintiff's age at the original alleged onset date rather than at the amended alleged onset date; however, Plaintiff's age at the amended alleged onset date would have put her in the same category.

3

determined that, considering Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, and that Plaintiff was not under a disability from the amended alleged onset date through the date of his decision. Tr. at pp. 24-25.

### D. The Parties' Briefings on Their Cross-Motions

In her brief, Plaintiff first argues that the ALJ gave insufficient weight to the opinion of Kimberly Harvey, Plaintiff's treating Licensed Mental Health Counselor ("LMHC"). Dkt. No. 11, Pl.'s Mem. of Law, pp. 8-15. Plaintiff argues that the provider is qualified to assess the severity of an established impairment, and that the ALJ should have given her opinion more weight; Plaintiff contends that her opinion is supported by her medical records. Plaintiff argues that the ALJ substituted his opinion for that of Ms. Harvey, and that the ALJ should have requested additional information from Ms. Harvey before discrediting her opinion. *Id.*

Plaintiff next contends that she is disabled under Listing 12.06. *Id.* at pp. 15-19. Finally, Plaintiff contends that it was error for the ALJ to not fully credit Plaintiff's testimony regarding her limitations, arguing that Plaintiff's past work record, activities of daily living, treatment records, and use of medications support finding her to be credible. *Id.* at pp. 19-22.

In response, Defendant contends that the ALJ's finding that Plaintiff did not meet or medically equal a Listing is supported by substantial evidence. Dkt. No. 18, Def.'s Mem. of Law, pp. 3-5. Defendant argues the RFC is supported by substantial evidence, and that the ALJ properly weighed the evidence and opinions in the record, and properly

4

analyzed the LMHC's opinion. *Id.* at pp. 6-9. Defendant further argues that there was sufficient evidence in the record for the ALJ to make his determination, and that the ALJ properly assessed Plaintiff's subjective allegations regarding her symptoms. *Id.* at pp. 9-13.

## II. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520 & 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an

6

> impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

### III. ANALYSIS

### A. The ALJ's Step Three Finding

Plaintiff contends that she is disabled under Listing 12.06. Pl.'s Mem. of Law at pp. 15-19. In particular, she argues that she meets at least three of the four Paragraph B criteria, and meets or equals the Paragraph C criteria under the Listing. *Id.* at p. 19. She argues all of her treating sources concluded that she was significantly limited in social functioning, had difficulty sustaining focus, concentration, and ability to attend, had problems with memory, had a low stress tolerance, and was at risk of decompensation. *Id.* Plaintiff points out that she lives with her parents and argues that she is unable to function outside of her home. *Id.*

The ALJ found that Plaintiff had a moderate limitation in understanding, remembering, or applying information. Tr. at p. 19. The ALJ based this on Plaintiff's

7

subjective complaints regarding her memory and ability to complete tasks, her testimony regarding her ability to perform simple tasks and follow instructions, and her ability to interact with medical professionals and comply with their instructions. *Id.* The record supports the ALJ's findings. Tr. at p. 19 (citing Tr. at pp. 234, 235, 239, 243, 245, 251, 268, & 283); *see also* Tr. at p. 193 (Plaintiff's Function Report stating that she "help[s] around the house however [she is] asked to").

The ALJ found that Plaintiff has a moderate limitation in interacting with others. *Id.* Plaintiff alleged problems with social interaction and being in crowds, but the ALJ found that her activities of daily living demonstrate that she can and does interact with others and go into public, if with some difficulty. Tr. at pp. 19-20. The ALJ also noted the record reflected that Plaintiff had a "good rapport with providers, was described as pleasant and cooperative, had good interactions with non-medical staff, and appeared comfortable during appointments." Tr. at p. 20. The record supports the ALJ's findings. Tr. at pp. 193, 196, 262, 273, 292, & 294.

The ALJ found that Plaintiff has a moderate limitation in concentrating, persisting, and maintaining pace. Tr. at p. 20. The ALJ described that, although Plaintiff alleged difficulty with concentration and focus, such allegations are not supported by her reported activities of daily living, and the record did not reflect distractibility. *Id.* Specifically, Plaintiff reported she was able to prepare her own meals, watch TV, read, manage funds, use the internet, and handle her own medical care, and the record does not mention distractibility or reflect an inability to complete testing that assesses concentration and

8

attention. *Id.* (citing Tr. at pp. 237, 251, 283, 292, 294, 296, 297, 298, 300, 302, & 304). Such findings are well supported.

The ALJ next determined that Plaintiff has a mild limitation in adapting or managing herself; while she asserts difficulty getting along with others, she describes an ability to handle self-care and personal hygiene and prepare meals, pay bills, go to doctors' appointments, take medications, shop, and read. *Id.* The ALJ found the record reflected that she had appropriate grooming and hygiene, no problem getting along with providers, normal mood and affect, and no problems with temper control. *Id.* The record supports this assessment. *See* Tr. at pp. 193-97, 292, 294, 296, 297, 298, 300, 302, & 304.

The ALJ determined that Plaintiff's impairments do not cause at least two marked limitations or one extreme limitation, and so the Paragraph B criteria were not satisfied. *Id.* In addition, the ALJ found that the Paragraph C criteria were not satisfied because the record does not establish that Plaintiff has only marginal adjustment, a minimal capacity to adapt to changes. *Id.* The ALJ also noted that no State agency psychological consultant concluded that a mental listing was medically equaled. *Id.* These conclusions are supported by the record.

Plaintiff argues that she has at least three of the four Paragraph B criteria and meets or equals the C criteria, because "[a]ll of the treating sources concluded that she was significantly limited in social functioning, had difficulty sustaining focus, concentration, and ability to attend, had problems with [her] memory, had a low stress tolerance, and was at risk of decompensation. She needs to live with her parents and is unable to function

9

outside of her home." Pl.'s Mem. of Law at p. 19. The only substantive opinion in the record is that of Ms. Harvey. Plaintiff's conclusory contentions are not reflected in Ms. Harvey's statement, and Plaintiff's contentions are without any explanation or citation. The ALJ's Listing determination is supported by substantial evidence and is not a basis for remand.[4]

### B. Plaintiff's Subjective Complaints

Plaintiff next contends that it was error for the ALJ to not fully credit her testimony regarding her limitations, and argues that her past work record, activities of daily living, treatment records, and use of medications support finding her credible. Pl.'s Mem. of Law at pp. 19-22. Plaintiff notes that none of her providers have doubted her reports of panic attacks, and contends that the ALJ failed to give Plaintiff an opportunity to explain any perceived inconsistencies or contradictions in the record. *Id.* at pp. 21-22. Plaintiff also takes issue with the ALJ categorizing Plaintiff's care as conservative. *Id.* at pp. 13-14.

"'An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Schlichting v. Astrue*, 11 F. Supp. 3d 190, 205 (N.D.N.Y. 2012) (quoting *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999)). The Second Circuit recognizes that "'[i]t is

---

[4] Plaintiff also raises in passing that "[s]he probably also meets Listing 12.04 for her depression." Pl.'s Mem. of Law at p. 19 n.6. The above analysis applies as well to any such contention.

10

the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant,'" and that "[i]f there is substantial evidence in the record to support the Commissioner's findings, 'the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain.'" *Schlichting v. Astrue*, 11 F. Supp. 3d at 206 (quoting *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d at 642; *Aponte v. Sec'y, Dep't of Health and Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984)). The ALJ has the benefit of directly observing a claimant's demeanor and "other indicia of credibility" and so the ALJ's assessment is generally entitled to deference. *Weather v. Astrue*, 32 F. Supp. 3d 363, 381 (N.D.N.Y. 2012) (citing *Tejada v. Apfel*, 167 F.3d 770, 776 (2d Cir. 1999)).

In order to assess the claimant's subjective complaints, the ALJ must consider the following factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning the claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 404.1529(c)(3) & 416.929(c)(3).

Here, the ALJ considered that Plaintiff's primary care physician treated her with conservative care (which Plaintiff disputes, *see infra*), that therapy and medication both help her cope with symptoms of anxiety, and that she has experienced improvements in her panic attacks with medication without any reportable side effects. Tr. at p. 22. The

11

ALJ considered Plaintiff's activities of daily living, including engaging in activities such as shopping, reading, writing, watching TV, doing laundry, and preparing simple meals. *Id.* The ALJ also considered that Plaintiff takes care of her personal hygiene, does not need reminders to go places, has intact relationships with family members and was married for an extended period. *Id.*

The ALJ properly assessed the record and sufficiently stated his reasoning for finding that Plaintiff's statements were not consistent with the evidence in the record. While Plaintiff contests that her medication can be considered conservative treatment, the Court is not convinced that it was error for the ALJ to refer to Plaintiff's anti-anxiety medication as conservative treatment. In any event, an improper characterization of that treatment alone would not render the analysis invalid, because the ALJ's determination was based on on a number of other considerations. Plaintiff also contends that she is entitled to credibility because of her past work record. Pl.'s Mem. of Law at pp. 21-22. "Although it is true that 'a good work history may be deemed probative of credibility,' it remains 'just one of many factors' appropriately considered in assessing credibility." *Campbell v. Astrue*, 465 Fed. Appx. 4, 6 (2d Cir. 2012) (summary order) (quoting *Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir. 1998)). Although Plaintiff cites to evidence that would support her position, the ALJ's determination regarding Plaintiff's subjective complaints is entitled to deference and is supported by substantial evidence.

Although the ALJ may not have discussed all the factors listed in 20 C.F.R. §§ 404.1529(c)(3) & 416.929(c)(3), he explained his assessment, pointing to record evidence, and any purported "failure to discuss those factors not relevant to his credibility

determination does not require remand." *Cichocki v. Astrue*, 534 Fed. Appx. 71, 76 (2d Cir. 2013) (summary order); *see also Cass v. Comm'r of Soc. Sec.*, 2016 WL 8732514, at *9 (N.D.N.Y. Jan. 22, 2016) (citing *Cichocki* for the same proposition); *Cheek v. Comm'r of Soc. Sec.*, 2015 WL 3857253, at *14 (N.D.N.Y. June 22, 2015) (same). The ALJ's determination is supported by substantial evidence.

### C. The ALJ's Weighing of Opinions

Finally, Plaintiff contends that the ALJ improperly considered the evidence of record, and in particular gave insufficient weight to the opinion of Plaintiff's treating LMHC. Pl.'s Mem. of Law at pp. 8-13. Plaintiff argues that the LMHC is qualified to assess the severity of her impairments, and that her opinions were supported by the medical records. *Id.* Plaintiff contends that the ALJ substituted his opinion for that of Ms. Harvey, and argues that the ALJ should have requested additional information from her before discrediting her opinions. *Id.* Plaintiff points out that there was no consultative examination on which the ALJ relied. *Id.* at p. 13.

Here, it is unclear how much, if any, weight the ALJ gave to any portion of Ms. Harvey's opinion. In full, Ms. Harvey's opinion provides that Plaintiff

> has been a client at this agency since April 2015. She has been actively involved with treatment, and is compliant with all recommendations. She has been participating in individual therapy to address concerns associated with her mental health diagnoses of Unspecified Bipolar and Related Disorder, Post-Traumatic Stress Disorder, and Unspecified Anxiety Disorder. Kelly has demonstrated in therapy how these diagnoses could negatively impact her ability to sustain full time employment. Kelly reports an ongoing struggle with social interactions and abrupt changes, which could be detrimental to sustaining full time employment. She can at times be easily triggered, which increases symptoms of depression and/or anxiety, and for her can make even simple tasks overwhelming.

Tr. at p. 371.

In his determination, the ALJ wrote that

> [L]ittle weight is accorded to the opinion of Ms. Harvey, the claimant's mental health provider, that the claimant's mental health issues negatively impact her ability to sustain full time employment. In Ms. Harvey's opinion, the claimant's anxiety and depression can be triggered easily and make even simple tasks overwhelming. Ms. Harvey's opinion is based on the claimant's subjective reports and is not supported by corroborating clinical evidence. Further, I note that Ms. Harvey is not an acceptable medical source under the agency's regulations and her opinion is inconsistent with office treatment records suggesting her belief that the claimant was suited for employment as she referred the claimant to a vocational services agency. In addition, the determination of a person's ability to work is an administrative finding dispositive of a case, and as such, it is an opinion exclusively reserved to the Commissioner and bestowed upon me.

Tr. at pp. 22-23 (internal citations omitted). From this analysis, it is possible that the ALJ gave little weight to Ms. Harvey's general opinion that Plaintiff's mental health issues negatively impact her ability to sustain full time employment, and no weight to the rest of her opinion, regarding Plaintiff's ability to deal with social interactions and abrupt changes, and her ability to perform simple tasks. It is also possible that the ALJ gave little weight to Ms. Harvey's general opinion regarding Plaintiff's ability to sustain full time employment, and gave some greater amount of weight to the rest of the opinion. The RFC provides Plaintiff

> can perform a full range of work at all exertional levels except that the claimant must avoid concentrated exposure to pulmonary irritants such as fumes, odors, dust and gases; must perform work consisting of unskilled tasks and requiring little or no judgment to do simple duties that can be learned on the job in a short period of time; can have occasional interaction with the general public, co-workers and supervisors.

14

Tr. at pp. 20-21. The RFC in some ways appears to contain limitations that are similar to portions of Ms. Harvey's opinion, by limiting Plaintiff's social interactions, and by limiting her to simple tasks. However, the ALJ in limiting Plaintiff to simple work and occasional interactions with others writes that this is based upon according "extreme deference to her subjective reports," and that "the objective evidence of record, including mental status notes and conservative care, would support a finding of little to no mental work limitations." Tr. at p. 23. The ALJ thus appears to have discounted Ms. Harvey's opinion as to Plaintiff's difficulties with social interactions, abrupt changes, and that "even simple tasks" can be "overwhelming." Indeed, the RFC's provision that Plaintiff can perform simple duties that can be quickly learned on the job and can have occasional interaction with the general public, co-workers and supervisors appears to be beyond the capacity opined by Ms. Harvey. Tr. at p. 21. It is thus entirely unclear how much weight the ALJ gave this opinion. *Cardillo v. Colvin*, 2017 WL 1274181, at *11 (N.D.N.Y. Mar. 24, 2017). As this is the only substantive opinion in the record that provides any sort of analysis of Plaintiff's functional limitations, it is particularly important to determining whether the ALJ's determination is supported.

In addition, because the ALJ found Plaintiff has multiple severe mental illnesses, it was necessary that he rely upon a medical professional's assessment in order to assess Plaintiff's functional capacity. *See Walker v. Astrue*, 2010 WL 2629832, at *7 (W.D.N.Y. June 11, 2010); *Ellersick v. Berryhill*, 2017 WL 6492519, at *4 (W.D.N.Y. Dec. 19, 2017) (determining that the ALJ should have obtained a medical opinion regarding the plaintiff's mental ability to perform work-related functions because the ALJ "found that

15

[plaintiff] suffered from multiple severe mental impairments . . . and thus this is not a situation where the ALJ can 'render a common sense judgment about functional capacity even without a physician's assessment.'") (citation omitted); *Rizzo v. Berryhill*, 2017 WL 3578701, at *16 (S.D.N.Y. Aug. 17, 2017) ("[T]he duty to develop the record is particularly important where an applicant alleges he is suffering from a mental illness, due to the difficulty in determining whether these individuals will be able to adapt to the demands or stress of the workplace.") (internal quotation marks omitted) (citations omitted)).

As such, the matter is remanded to Defendant to re-assess the RFC.[5]

### IV. CONCLUSION

For the reasons stated herein, it is hereby

**ORDERED**, that Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 11) is **GRANTED**; and it is further

**ORDERED**, that Defendant's Motion for Judgment on the Pleadings (Dkt. No. 18) is **DENIED**; and it is further

**ORDERED**, that Defendant's decision denying Plaintiff benefits is **VACATED** and **REMANDED** pursuant to Sentence Four of section 405(g) for further proceedings; and it is further

---

[5] Plaintiff also partially makes the argument that the RFC finding that Plaintiff could work on a full time, sustained basis is not supported by substantial evidence. Pl.'s Mem. of Law at pp. 15-19. In light of the Court's finding that the RFC is not supported by substantial evidence, the Commissioner may consider this argument on remand.

**ORDERED**, that the Clerk of the Court serve a copy of this Decision and Order upon the parties to this action.

Date: July 24, 2019
      Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge